# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| AUGUST TECHNOLOGY CORPORATION, A DELAWARE CORPORATION, AND RUDOLPH TECHNOLOGIES, INC., A DELAWARE CORPORATION,<br><br>PLAINTIFF,<br><br>V.<br><br>CAMTEK, LTD., A FOREIGN CORPORATION,<br><br>DEFENDANT. | CIVIL NO. 05-1396 (MJD/AJB)<br><br><br><br>**REPORT & RECOMMENDATION** |

Ernest W. Grumbles, III, Regina Vogel Culbert, Daniel W. McDonald, Heather J. Kliebenstein, Joseph E. Lee, and Rachel C. Hughey, Merchant & Gould PC, 80 South 8th Street, Suite 3200, Minneapolis MN 55402 (for Plaintiff);

Ann N. Cathcart Chaplin and Michael E. Florey, Fish & Richardson PC, 60 South 6th Street, Suite 3200, Minneapolis, MN 55402;

David R. Francescani, Edmond R. Bannon, John D. Garretson, and Michael F. Autuoro, Fish & Richardson, PC, 153 East 53rd Street, 52nd Floor, New York, NY 10022;

Donald L. Rhoads, Jean-Paul Ciardullo, and Jonathan S. Caplan (pro hac vice), Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036;

William A. LeMire, Arthur Chapman Kettering Smetak & Pikala, PA, 81 South 9th Street, Suite 500, Minneapolis, MN 55402-3214 (for Defendant).

## I.   INTRODUCTION

This matter is before the Court, Chief United States Magistrate Judge Arthur J. Boylan, on Plaintiff's Brief in Support of Request for Supplemental Damages [Docket No. 627]. This matter was referred to this Court for proposed findings of fact and recommendations of law

pursuant to 28 U.S.C. § 636(b)(1)(B). [Docket No. 655.] A hearing was held on the motion on November 1, 2010. Daniel W. McDonald, Earnest Grumbles, and Joseph Lee appeared on behalf of Plaintiff. Christopher Colvin, Jonathan Caplan, and William LeMire appeared on behalf of Defendant.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that Plaintiff's Brief in Support of Request for Supplemental Damages [Docket No. 627] be **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

Plaintiff August Technology Corporation filed its Complaint on July 14, 2005. [Docket No. 1.] There was no motion for preliminary injunction in this action. The jury trial in this matter commenced on February 2, 2009, [Docket No. 406] and concluded on March 5, 2009. [Docket No. 465.] On March 5, 2009, the jury returned a verdict in favor of Plaintiff and found that Plaintiff is entitled to $6,782,490.00 in lost profits damages. [Docket No. 466.] The designated area for reasonable royalties on the special verdict form was left blank by the jury.

On August 28, 2009, the Honorable Michael J. Davis, Chief United States District Court Judge for the District of Minnesota, issued Order on Final Judgment and Injunctive Relief. [Docket No. 547]. The August 28, 2009 Order directed, based on the jury's verdict, that a judgment of infringement, validity, and enforceability of the asserted claims be entered and the Order also granted Plaintiff's Motion for Permanent Injunction. In addition, Chief Judge Davis ordered that "[Plaintiff] is entitled to an accounting for all Falcon sales, if any, since September 2008." (*Id.* at 4.)

On July 27, 2010, Chief Judge Davis issued an Order [Docket No. 644] on Defendant's Motion for Judgment as a Matter of Law of No Lost Profits and a New Trial or Remittitur

Regarding Reasonable Royalty, in which Defendant "contend[ed] that the jury's award of $6,782,490 in lost profits was unsupported by substantial evidence because there were more than two suppliers in the wafer inspection industry during the relevant period." (Mem. of Law & Order, 11, July 27, 2010.) Chief Judge Davis extensively reviewed the record, see *id.* at 12-13, and concluded that Plaintiff presented evidence supporting the jury's lost profits award. Chief Judge Davis concluded:

> First, August presented evidence showing that, but for Camtek's infringement, there is a reasonable probability that August would have made the infringing sales. Second, August presented evidence indicating that it would have made the sales because the market is a two-supplier market. Finally, August presented evidence showing that, even if it was not a two-supplier market, August held at least 60% of the market share. In this case, the lost profits award equates to less than 100% of Camtek's sales. Based on the exhibits and testimony presented at trial, the Court finds sufficient evidence to support the jury's award of lost profits in the amount of $6,782,490 to August.

(*Id.* at 13.) Therefore, Defendant's Motion for Judgment as a Matter of Law of No Lost Profits and a New Trial or Remittitur Regarding Reasonable Royalty was denied. (*Id.*)

Subsequently, Plaintiff identified four infringing sales that were not part of the evidence offered at trial. [Docket No. 628]. The sales were as follows: (1) September 20, 2008, for $740,000; (2) November 20, 2008, for $1,144,524; (3) January 26, 2009, for $640,666; and (4) May 29, 2009, for $234,960. The total sales revenue on the four infringing sales was $2,760,150. Plaintiff brings the present motion seeking accounting of these sales and an award of supplemental damages consistent with the August 28, 2009 Order. Defendant opposes the motion.

## III. DISCUSSION

Pursuant to a district court's discretion to assess and compute damages under 35 U.S.C. § 284, a district court has discretion to award supplemental damages "[f]or infringing activity done after an infringement verdict and damage award is rendered and before final judgment is entered." Robert A. Matthews, Jr. 4 ANNOTATED PATENT DIGEST § 30:140.50 (Nov. 2010). This Court has thoroughly reviewed the authority on post-verdict accounting of damages. *See, e.g., Maxwell v. J. Baker, Inc.*, 879 F. Supp. 1007, 1011 (D. Minn. 1995), *rev'd on other grounds*, 86 F.3d 1098 (Fed. Cir. 1996) (accounting for sales during period not considered by finder of fact); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp.2d 951, 960-61 (N.D. Cal. 2009) (examining the authority concerning supplemental damages and concluding that 35 U.S. § 284 permits supplemental damages); *Stryker Corp. v. Davol, Inc.*, 75 F. Supp.2d 746, 747 (W.D. Mich. 1999), *aff'd* 234 F.3d 1252 (Fed. Cir. 2000) (awarding supplemental damages based upon the reasonable royalty rate found by the jury); *Oscar Mayer Foods Corp. v. Conagra, Inc.*, 869 F. Supp. 656, 668 (W.D. Wis. 1994) (awarding supplemental damages "on the basis of product sales which occurred after the entry of judgment at the [set percentage] rate of . . . post-judgment sales revenue based upon extrapolation from the jury's verdict").

Accounting of supplemental damages requires a three-step analysis: First, the court must determine the period of time considered by the finder of fact and the period of time for accounting. Second, the court must determine whether or not there was an alleged infringing act that occurred during the period of time for accounting. As part of this second inquiry, the court may conclude that the determination of whether or not there was an infringing act is better suited for a separate litigation. Finally, if the court finds that there was an infringing act that occurred

during the period of time for accounting, then the Court must identify and apply a method for computing damages for the infringing act.

### a. The Time Period at Issue & Defendant's Alleged Acts Infringement

In the present case, Chief Judge Davis has already set the period of time for accounting: Plaintiff is entitled to accounting for the period of September 1, 2008, to the date Judgment was entered. Furthermore, Chief Judge Davis's Order on Final Judgment and Injunctive Relief states that Plaintiff "is entitled to an accounting for all *Falcon* sales." (Order on Final Judgment and Injunctive Relief, at 4 (emphasis added); *see also* Special Verdict Form, 1-3 (referring to "Camtek's Falcon device" and "every Falcon device accused of infringement"); *see also* Tr. 2806:23-2808:16; [Docket No 552].) This Court does not read Defendant's arguments in opposition to Plaintiff's motion to contest that all four sales constitute "Falcon sales" or infringing device sales. Therefore, this Court considers all four sales to be infringing sales for the purpose of the supplemental damages analysis.

### b. Method for Computing Damages

#### *i. Should this issue be considered at the present time?*

When Defendant originally briefed this issue, Defendant argued that Plaintiff's request for supplemental damages was premature because Chief Judge Davis was still considering Defendant's Motion for Judgment as a Matter of Law of No Lost Profits and a New Trial or Remittitur Regarding Reasonable Royalty. Since the briefing on the issue of supplemental damages was complete, but before this Court heard Plaintiff's motion on supplemental damages, Chief Judge Davis denied Defendant's Motion for Judgment as a Matter of Law of No Lost Profits and a New Trial or Remittitur Regarding Reasonable Royalty. Therefore, this argument is rejected as moot.

In Defendant's Motion to Limit Discovery in Light of the Federal Circuit's *Transocean* Decision and to Stay Supplemental Damages Proceedings, Defendant contends that staying the supplemental damages decision is warranted because Chief Judge Davis stayed judgment in this matter and Defendant believes that it is likely to prevail on appeal, which will render the supplemental damages issue moot. (Camtek's Mot. to Limit Discovery 10-11, Sept. 22, 2010.) This Court is not persuaded by this argument because the minimal prejudice to proceeding at this juncture is that Defendant may need to post an additional supersedeas bond.

*ii. How should the Court calculate damages?*

The parties' primary dispute concerns the method of computation. Where there is a jury finding concerning the rate of royalty, courts often apply that rate. *Stryker Corp.*, 75 F. Supp. 2d at 747; *Oscar Mayer Foods Corp.*, 869 F. Supp. at 668. Where there is no finding on the issue of royalties, some courts have extrapolated a per unit rate of damages. *See, e.g., Presidio Components Inc. v. American Technical Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL 3070370, at *2 (S.D. Cal. Aug. 5, 2010); *see also Presidio Components Inc. v. American Technical Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL 1462757, at *37 (S.D. Cal. Apr. 13, 2010). At least one court reached a damage rate by dividing the damage award by the total sales presented at trial. *Aero Products Intern., Inc. v. Intex Recreation Corp.*, No. 02 C 2590, 2005 WL 1498667, *2 (N.D. Ill. 2005). All of the cases suggest that a determination that is consistent with the verdict is presumptively reasonable under 35 U.S.C. § 285.

There is no dispute that the jury awarded lost profits in the amount of $6,782,490. To reach this conclusion the jury found a causal connection between the infringement and Plaintiff's loss of profits. But, the verdict form does not explicitly indicate whether the jury found a

6

multiple-supplier market or a two-supplier market, or what the jury found Plaintiff's lost profits to be on a per unit basis.

Plaintiff argues that Defendant earned $2,760,150 from the four-infringing sales that occurred during the period of time for accounting. (Aff. McCloskey, Ex. 1 (Apr. 27, 2010) [Docket No. 628]; *see also* [Docket No. 627].) Plaintiff argues that the most appropriate calculation for a supplemental damages award is the ratio of the awarded damages to the total infringing sales (or the jury award of $6,782,490 in damages to Defendant's $22,894,110 in revenue for infringing sales). Thus, Plaintiff suggests that the Court award $817,832 (or 29.63 percent of $2,760,150) in supplemental damages.

Defendant contends that Plaintiff is erroneously calculating supplemental damages based upon Defendant's revenue. Plaintiff chose to calculate a rate for damages that is based upon lost profits to total infringing sales. But, there are other methods for calculating a rate of damages. This Court identified two other rates: First, there was evidence to support a two-supplier market; there was evidence of 36 infringing sales; and therefore, it can be concluded that the jury awarded Plaintiff $188,402 per sale and that rate could apply to each of the four infringing sales at issue in the present motion. Second, there was evidence of a multiple-supplier market; there was evidence that Plaintiff controlled at least 60 percent of the market; 60 percent of 36 sales is 21 complete sales; and therefore, it can be concluded that the jury awarded Plaintiff $322,975 per sale based upon 21 complete sales and that rate could be applied to two of four the infringing sales at issue in the present motion.[1]

The role of the Court at this juncture is to determine a methodology for calculating supplemental damages that is reasonable. It is reasonable to use a calculation method that is

---

[1] The damage award of $6,782,490 divided by 21 infringing sales equals a damage award of $322,975.714 per infringing sale.

7

consistent with the jury's findings. This Court could apply Plaintiff's method, which yields a supplemental damage award of $817,832 for all four of the infringing sales; this Court could apply a two-supplier market calculation, which yields a supplemental damage award of $753,610 (or $188,402 multiplied by four) for all four of the infringing sales; or (3) this Court could apply a multiple-supplier market calculation, which yields a supplemental damages award of $645,946 (or $322,973 multiplied by two infringing sales) based upon two of the four infringing sales.

This Court concludes that the multiple-supplier market calculation method is the most reasonable rate to apply. At trial, Plaintiff sought lost profits of $322,973 per infringing sale. Plaintiff presented evidence of a two-supplier market and a multiple-supplier market. The jury awarded Plaintiff $6,782,490 in damages. It is a reasonable interpretation of the jury's verdict to conclude that the jury awarded Plaintiff damages for 21 complete infringing sales (or a 60-percent share of the infringing sales market) at a per unit rate of $322,975. Thus, it is reasonable to apply this rate and the multiple-market calculation to the infringing sales that occurred during the time period for accounting.

Defendant contends that any damage rate should only be applied to one sale because the $234,960 sale was a demo machine, the $640,666 sale was to a customer that previously chose a third-party manufacturer over Plaintiff, and the $1,144,524 sale contained 3D technology superior to Plaintiff's products. Therefore, Defendant contends that Plaintiff cannot show "but for" causation as to these three sales. First, Defendant's argument disregards the jury's apparent conclusion that Plaintiff met its burden of proving "but for" causation. Second, there is evidence to support that the jury considered and rejected all of these arguments.

Therefore, this Court recommends that that Plaintiff be awarded supplemental damages in the amount of $645,946 (or $322,973 per infringing sale for two infringing sales). A per-

8

infringing-sale rate of $322,973 is reasonable because it reflects the amount of per unit damages Plaintiff sought at trial and it also reflects the approximate rate that the jury awarded to Plaintiff based upon a multiple-supplier market theory. Applying a per-infringing-sale rate of $322,973 to two infringing sales is reasonable because two complete sales reflects the jury's apparent finding that Plaintiff controls approximately 60 percent of a multiple-supplier market.

## IV. PROPOSED FINDINGS

a. The period of time at issue for the purpose of accounting is September 1, 2008, to the entry of Judgment.

b. Defendant made four infringing sales between September 1, 2008, and the entry of Judgment.

c. The most reasonable calculation of supplemental damages based upon the jury's verdict is to apply a per-infringing-sale rate of $322,973 to two of the infringing sales during the period of time for accounting.

## V. RECOMMENDATION

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that Plaintiff's Brief in Support of Request for Supplemental Damages [Docket No. 627] be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff be awarded supplemental damages in the amount of $645,946;

2. Plaintiff be granted leave to bring such additional motions for supplemental damages as are supported by Plaintiff's post-verdict discovery; and

3. Plaintiff's motion be denied in all other respects.

Dated: 11/17/10        s/ Arthur J. Boylan
                       Chief Magistrate Judge Arthur J. Boylan
                       United States District Court

9

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before _____December 2, 2010_____ .