UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| August Technology Corporation, and Rudolph Technologies, Inc., | Civil No. 05-1396 MJD/AJB |
| Plaintiff | |
| v. | **REPORT & RECOMMENDATION** |
| Camtek Ltd., | |
| Defendant. | |

Daniel W. McDonald, Esq., Joseph E. Lee, Esq., and Ernest W. Grumbles, Esq. for the plaintiffs, August Technology Corporation and Rudolph Technologies, Inc.

Jonathan S. Caplan, Esq., Christopher A. Colvin, Esq., William A. LeMire Esq., for the defendant, Camtek Ltd.

Pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket No. 721] this matter was referred to the undersigned, Chief Magistrate Judge Arthur J. Boylan, by the Honorable Michael J. Davis, Chief Judge, for a Report & Recommendation on the motion of plaintiffs August Technology Corporation and Rudolph Technologies, Inc. for contempt. Oral argument was heard on May 27, 2011 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

For the following reasons, the undersigned magistrate judge recommends that the motion for contempt be granted.

**REPORT**

**I. Findings of Fact**

The facts are undisputed. Plaintiffs and defendant manufacture machines that

1

automatically inspect integrated circuits made on semiconductor wafers. In July 2005, plaintiffs brought this action alleging patent infringement. The matter was tried to a jury, and on March 5, 2009, the jury found plaintiffs' patent was valid and infringed by defendant's Falcon brand machines. The jury found the infringement was not willful. At trial plaintiffs presented evidence that they held at least a 60% market share in a multi-player market; the jury awarded plaintiffs lost profits of $6,782,490 through October 2008, consistent with a 60% share of a multi-player market.

On March 9, 2009, defendant notified its sales force of what it called the "preliminary verdict," urging them to "emphasize [to customers] that this process is not over and no judgment has been made." Ciardullo Damages Decl. [Docket No. 725] Ex. A at SEMITEXPV005301. On March 12, 2009, plaintiffs informally requested updated information on defendant's sales of Falcon machines since October 2008, and advised defendant they would consider any post-verdict sales of Falcon machines to be willful infringement. Defendant responded that it "disagree[d] with [plaintiffs'] 'position' that any sales of Falcons post-verdict are acts of willful infringement." [Docket No. 636, Ex. 1 at 5.] On March 19, 2009, defendant filed the first in a series of post-trial motions seeking to overturn the verdict [Docket No. 470]. Defendant also issued a press release stating its position – maintained consistently since the trial – that there was no infringement and the "unjust verdict" would eventually be vacated or reversed. Ciardullo Damages Decl. Ex. A at SEMITEXPV005302.

On August 28, 2009, the court ruled on the parties' post-trial motions, entered judgment for plaintiffs on the jury verdict, and determined that, based on the facts established at trial, there was no need for further trial on the defense of inequitable conduct, which had been reserved for a

bench trial [Docket No. 545].  The court also issued a permanent injunction enjoining defendant from, among other things, "communicating with third parties (in person, via phone, via email or by any other means) located in the United States for the purposes of offering to sell Falcon machines or machines that are colorable imitations thereof, notwithstanding where the third party intends to use the machines[.]"  Injunction ¶ 5(a) [Docket No. 547].

The parties filed yet more post-trial motions, most of which were ultimately denied.[1]  Meanwhile, defendant continued to communicate with customers in the United States about selling Falcon machines overseas.  In late September 2009, Mr. Rollo met with employees of Morgan PLC ("Morgan") at Morgan's Ohio headquarters.  At his deposition, Mr. Rollo confirmed that he had discussed the sale of a Falcon machine at the meeting.  Lee Contempt Decl. [Docket No. 718] Ex. B.  The following week he emailed the employees with a quote on a non-infringing machine.  The email added that "The Falcon quote will come out of Asia since it is being purchased in Asia for Asia."  Id., Ex. A.  In December 2009, after additional communications with Morgan employees, Mr. Rollo emailed to Morgan's Ohio headquarters a quote on a Falcon machine to be delivered to Malaysia.  Id., Ex. D.  Morgan later purchased the Falcon machine for $652,557.  Id., Ex. E.  In November 2009, Tommy Weiss, the vice president of Camtek USA, emailed his sales contact at Cree, a customer headquartered in North Carolina, offering to sell a Falcon machine for use in China for $756,000.  Id., Exs. F, G.  Cree later purchased the machine.  Id., Ex. K.

---

[1] On September 14, 2009, defendant filed another round of post-trial motions seeking judgment as a matter of law [Docket Nos. 551, 556, 561] and also to stay execution of the judgment [Docket No. 566].  The Court granted the motion to stay execution.  Plaintiffs moved for attorney's fees [Docket No. 572].

On October 30, 2009, while the Morgan sales negotiations were in progress, defendant moved to clarify the injunction, seeking to modify paragraph 5(a) to eliminate the "notwithstanding" clause, which would allow it to communicate with customers in the United States who intended to use the machines overseas [Docket No. 602]. The court denied the motion, along with most of the parties' other post-trial motions, on July 27, 2010 [Docket No. 644]. The following day, defendant moved to limit plaintiffs' request for discovery related to supplemental damages on the grounds that overseas sales did not infringe [Docket No. 645]. Defendant also appealed the injunction [Docket No. 650] and sought a stay from the Federal Circuit pending appeal [Docket No. 669]; the stay was denied, see August Tech. Corp. v. Camtek, Ltd., 395 Fed. Appx. 692, 693 (Fed. Cir. 2010) (unpublished), and the appeal remains pending.

Plaintiffs sought additional discovery on defendant's post-injunction sales [Docket No. 634]. Defendant opposed the discovery, and after rulings from the court, produced documents in January and February 2011 which revealed the two post-injunction sales. Plaintiffs have presented evidence that defendant received $652,557 on the Morgan sale and $756,000 on the Cree sale. Lee Contempt Decl. Exs. E, F, G, K. Plaintiffs now move the court to find defendant in contempt of the injunction and to impose sanctions.

## II. Conclusions of Law

In patent disputes as in other areas of law, courts have "inherent authority to enforce their own injunctions" through contempt proceedings. Abbott Labs. v. TorPharm, Inc., 503 F.3d 1372, 1379 (Fed. Cir. 2007). A party moving for civil contempt must show "(1) the offending party violated an order of the court; (2) the violation was more than de minimis or technical

noncompliance; and (3) the conduct was not the product of a good faith or reasonable interpretation of the order." Navajo Nation v. Peabody Coal Co., 7 Fed. Appx. 951, 955 (Fed. Cir. 2001) (unpublished). The movant must prove by clear and convincing evidence that the order has been violated. Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co., 803 F.2d 1170, 1173 (Fed. Cir. 1986). "The general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt." Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed. Cir. 1998). However, a plain reading of the order must put the enjoined party on notice of what acts are prohibited. Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2204 (2009). "If there is a fair ground of doubt" as to whether the order has been violated, the court should not find contempt. Preemption Devices, 803 F.2d at 1173.

Paragraph 5(a) of the injunction prohibits defendant from "communicating with third parties (in person, via phone, via email or by any other means) located in the United States for the purposes of offering to sell Falcon machines or machines that are colorable imitations thereof, *notwithstanding where the third party intends to use the machines[.]*" Injunction ¶ 5(a) (emphasis added). Defendant does not dispute that it communicated with Morgan and Cree's United States representatives after the injunction was entered in order to sell Falcon machines for delivery in Asia. In its defense, defendant advances three arguments: (1) the injunction does not cover its conduct; (2) the injunction is vague; and (3) the injunction exceeds the court's authority. All three arguments rest on a common premise: that the United States patent laws do not reach an offer made in the United States to sell a product for delivery overseas.

The United States patent statute provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States . . . infringes the patent."

35 U.S.C. § 271(a). "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 441 (2007). At the time of the Morgan and Cree sales, the Federal Circuit had not yet determined whether the location of the offer, or the location of the sale, controlled the infringement analysis. Shortly after defendant appealed the injunction in this matter, the Federal Circuit construed the phrase "offers to sell . . . within the United States," holding that "the location of the contemplated sale controls whether there is an offer to sell within the United States." Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296, 1309 (Fed. Cir. 2010). In Transocean, the infringer and a third party, both U.S. companies, met in Norway to negotiate a contract to sell a product for delivery in the United States. The Federal Circuit found such conduct "may constitute an offer to sell within the U.S. under § 271(a)." Id. at 1310.

Defendant argues, in essence, that it cannot be held in contempt of the court's injunction unless overseas Falcon sales infringe plaintiffs' patent. But that is not the court's inquiry. The issue is not whether overseas sales infringe, but rather, whether defendant's conduct in pursuing and making those sales violated the injunction.

Defendant first argues that paragraph 5(a) of the injunction does not prohibit its communications with Morgan and Cree, because those communications did not concern an "offer for sale" prohibited by the U.S. patent laws. The injunction elsewhere defines "offer for sale" as "any communication – such as an advertisement, brochure, price quotation, product manual, webpage, verbal offer for sale, or the like – that contains sufficient information regarding the terms of the sale for the Falcon machine . . . so as to constitute an offer under the

applicable law." Injunction ¶ 4.  Defendant suggests this definition limits paragraph 5(a)'s reach to communications for the purpose of making an "offer under the applicable law."  Because, in defendant's view, an offer to sell a Falcon machine for delivery overseas is not an "offer to sell within the United States" under 35 U.S.C. § 271(a), it is not an "offer under the applicable law," and therefore is not prohibited by the injunction.

The court disagrees with defendant's strained reading.  Paragraph 5(a) bars "communicating with third parties (in person, via phone, via email, or by any other means) located in the United States for the purposes of offering to sell Falcon machines . . . notwithstanding where the third party intends to use the machines."  Injunction ¶ 5(a).  This language is clear and unambiguous: the prohibited acts are communications, made by defendant to third parties located in the United States, for the purpose of offering to sell Falcon machines that may be used in the United States or elsewhere.  The "notwithstanding" clause explicitly contemplates sales of machines that may be delivered outside the United States.

Defendant admits that in fall 2009 it communicated with Morgan and Cree representatives in the United States and offered to sell Falcon machines for delivery overseas.  By its plain terms, paragraph 5(a) of the injunction reaches defendant's conduct.  "[W]here the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect."  Travelers Indem. Co., 129 S.Ct. at 2204.

Defendant next argues this prohibition cannot be enforced because it is vague and ambiguous.  "[T]he judicial contempt power is a potent weapon that cannot be founded upon 'a decree too vague to be understood.'"  TiVo Inc. v. EchoStar Corp., No. 2009-1374, 2011 WL 1486162, *10 (Fed. Cir. April 20, 2011) (quoting Int'l Longshoremen's Ass'n v. Phila. Marine

Trade Ass'n, 389 U.S. 64, 76 (1967)).  While "in certain circumstances vagueness can operate as a defense to contempt," "where a party faced with an injunction perceives an ambiguity in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague."  TiVo, 2011 WL 1486162, *10.

In essence, defendant argues that even if the injunction did not actually allow it to communicate with Morgan and Cree, it could reasonably be viewed as allowing those communications.  The court disagrees.  Paragraph 5(a) directs defendant not to communicate with third parties in the United States for the purpose of offering to sell Falcon machines, without regard to where those machines will be used.  Defendant's strained reading – that the prohibition reaches only communications directed to U.S. sales – flatly contradicts both the plain text and the history of the injunction.

Defendant argued offers to sell Falcon machines outside the United States did not infringe and should not be enjoined [See Docket No. 528 at 19-21].  The court rejected this argument and included the "notwithstanding" clause in paragraph 5(a).  Defendants chose to ignore the plain language of that clause and began communicating with Morgan in late September about selling a Falcon overseas.  About a month into these negotiations, defendant asked the court to clarify or modify the injunction and strike the "notwithstanding" clause, raising the same arguments the court had previously rejected [Docket No. 602].  Defendant did not wait for clarification, however, but continued communicating with Morgan representatives and also began communicating with Cree representatives about overseas Falcon sales.

There is nothing vague or ambiguous about paragraph 5(a) of the injunction.  The "notwithstanding" clause expressly prohibits defendant from making the sort of communications

8

it made to Morgan and Cree in the fall of 2009. The court finds paragraph 5(a) sufficiently advises defendant of what activities are prohibited, and the injunction is not too vague or ambiguous to be enforced.

Defendant's final argument is that the "notwithstanding" clause, if it bars communications related to foreign sales, exceeds the court's authority. Defendant has repeatedly made this argument, and it has been consistently rejected. It must be rejected again. "The time to appeal the scope of an injunction is when it is handed down, not when a party is later found to be in contempt." TiVo, 2011 WL 1486162, *13. Defendant sought modification from the court, and was denied; the issue is now before the Federal Circuit.

In the meantime, the injunction remains in force. Even if the Federal Circuit ultimately adopts defendant's position, defendant may still be liable for prior communications that violated the injunction. An injunction's validity is to be decided by the court, not the parties. See United States v. United Mine Workers, 330 U.S. 258, 294 (1947). Until the court's decision is reversed, its orders are to be respected. Id. Violations of an order may be punishable as contempt even though the order is later reversed on appeal. Id.

Accordingly, the court concludes that the 2009 communications related to the Morgan and Cree sales violated the injunction. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 903 F.2d 1568, 1578 (Fed. Cir. 1990). Plaintiffs have presented evidence that defendant's prohibited communications led to two Falcon sales, the Morgan sale at $652,557 and the Cree sale at

$756,000.  Applying the figures previously determined in its Report & Recommendation [Docket No. 681], the court finds plaintiffs lost $322,973 in profits for each machine, for a total of $645,946.

The court recommends an award of double damages.  The language of the injunction is clear, and the injunction has yet to be modified by either this court or the Federal Circuit.  Defendant argued for an injunction which did not reach offers to sell overseas, but the court did not adopt its position.  Defendant then chose to disregard the plain text of the injunction and communicate with Morgan.  A month into those negotiations, defendant sought clarification and modification of the injunction in this court – yet proceeded to consummate both the Morgan and Cree transactions without waiting for the court to rule on its motion.

The court also recommends an award of attorney's fees and costs.   Attorney's fees may be appropriate in civil contempt proceedings arising from contempt of an order enjoining infringement of a patent.  See Siebring v. Hansen, 346 F.2d 474, 480 (8th Cir. 1965).  Here, the expense of bringing this motion for contempt constitutes part of plaintiffs' damages.  Accordingly, the court recommends an award of attorney's fees and costs in an amount to be determined, based on further submission of the plaintiffs.

## RECOMMENDATION

Based upon the foregoing Findings and Conclusions, the undersigned magistrate judge recommends that:

1. Plaintiffs' Motion For Contempt [Docket No. 715] be granted.

2. Defendant be ordered to pay plaintiffs $1,291,892, reflecting double damages, as a sanction for contempt.

3. Plaintiffs be awarded award of attorney's fees and costs in an amount to be determined by the court, reflecting fees incurred in bringing the instant motion for contempt.

Dated: August 11, 2011

                                           _s/ Arthur J. Boylan_____
                                           The Hon. Arthur J. Boylan
                                           United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **September 1, 2011.**

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.