UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rudolph Technologies, Inc.,　　　　　　　　　　Civil No. 05-1396 (JRT/FLN)

　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　**REPORT AND**
　　　　　　　　　　　　　　　　　　　　　**RECOMMENDATION**
Camtek Ltd.,

　　　　　　　Defendant.

---

Thomas Johnson, Daniel McDonald, and Roshni Patel for Plaintiff.
Wayne Stacy and William Mohrman for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 1, 2015 on Plaintiff Rudolph Technologies, Inc.'s motion for attorneys' fees (ECF No. 1018). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. *See* Order, ECF No. 1019. For the reasons set forth below, the Court recommends that Plaintiff's motion be **DENIED**.

## I. FINDINGS OF FACT[1]

Rudolph Technologies, Inc. and August Technology Corp. (collectively, "Rudolph") brought this patent infringement action against Defendant Camtek Ltd. ("Camtek") in 2005, alleging infringement of U.S. Patent No. 6,826,298 (the "'6,298 patent"). *See* Compl., ECF No. 1; Amend. Compl., ECF No. 103. In 2009, a jury determined that Camtek had infringed claims 1 and 3 of the '6,298 patent, and the Court entered judgment and a permanent injunction in favor of Rudolph on

---

[1] A detailed recitation of the facts of this case may be found in the Court's previous orders. *See, e.g.*, Mem. Op. & Order 3–15, ECF No. 964.

August 28, 2009. *See* Order, ECF No. 547; Judgment, ECF No. 548. In 2011, however, the Federal Circuit determined that the Court erred in its claim construction. *See August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1281 (Fed. Cir. 2011). Consequently, the Federal Circuit vacated the Court's judgment and permanent injunction, and remanded the case for further proceedings. *Id*. Following remand, the Court entered summary judgment in favor of Rudolph on the issue of infringement in March 2014. *See* Mem. Op. & Order, ECF No. 964. The Court entered a new final judgment and permanent injunction in this case on February 10, 2015. *See* Judgment, ECF No. 1011.

Rudolph now seeks to recover its attorneys' fees pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927. Mot. for Att'ys' Fees, ECF No. 1018. Rudolph asserts that this is an "exceptional case" under 35 U.S.C. § 285 and, as the prevailing party in this matter, it is therefore entitled to approximately $1.1 million in attorneys' fees because (1) Camtek's litigation position following remand was without merit, (2) Camtek hid that simple truth through costly motion practice, and (3) Camtek litigated this case in bad faith. *See generally* Pl.'s Mem. in Supp., ECF No. 1035; Pl.'s Reply, ECF No. 1050. In contrast, Camtek argues that Rudolph is not entitled to recover its attorneys' fees because this case was not "exceptional," contending that its litigation position following remand was supported by facts and law, and it did not litigate this case in an unreasonable manner. *See generally* Def.'s Opp'n Mem., ECF No. 1044.

## II. CONCLUSIONS OF LAW

### A. Legal Standard

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has defined an "exceptional case" under § 285 as "one that stands out from others with respect to the substantive strength of a party's litigating position

2

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 124 S. Ct. 1749, 1756 (2014). The determination of whether a case is exceptional is conducted on a case-by-case basis, considering the totality of the circumstances. *Id*. at 1756. Attorneys' fees may be awarded to a prevailing party in the rare case where the other "party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id*. at 1757. A party must prove a case is exceptional by a preponderance of the evidence. *Id*.

**B.      Analysis**

    **1.      Camtek's litigation position post remand**

On appeal from the 2009 jury verdict, Camtek challenged the Court's claim construction regarding the claim term "wafer," contending that under a proper construction, their Falcon device does not infringe the '6,298 patent.[2] *See August Tech. Corp.*, 655 F.3d at 1282. This Court construed "wafer" to be "a thin slice of semiconductor material with circuitry thereon that is ready for electrical testing, or any part thereof." *Id.* at 1282. Camtek argued to the Federal Circuit that wafers are "physically distinct substrates," and that "a plurality of wafers means more than one physically discrete wafer." *Id*. at 1283. The Federal Circuit agreed with Camtek, concluded that this Court incorrectly construed the claim term "wafer," and remanded the case "for a limited trial on infringement with respect to this claim element." *Id*. at 1286. The Federal Circuit's revised claim construction construed "wafer" as "a thin, discrete slice of semiconductor material with circuitry

---

[2]
        Both claims 1 and 3 of the '6,298 patent relate to "a system for inspecting integrated circuits printed on substrates such as wafers." *August Tech. Corp.*, 655 F.3d at 1282. Claim 1 requires "visual inputting of *a plurality of known good quality wafers* during training" in order to teach the system a standard for detecting defects. *Id*. at 1283 (emphasis added).

3

thereon that is ready for electrical testing having one or more dies. A plurality of wafers means more than one physically distinct wafer." *Id*. Accordingly, the key issue on remand was whether Camtek's Falcon device was capable of being trained with multiple discrete wafers. *See* ECF No. 1035 at 3; ECF No. 1044 at 4–5; *see also August Tech. Corp.*, 655 F.3d at 1286.

Rudolph argues that this case is exceptional under 35 U.S.C. § 285 because Camtek's non-infringement argument on remand was completely baseless. *See* ECF No. 1035 at 18. In short, Rudolph contends that Camtek knew its Falcon device infringed the '6,298 patent even under the Federal Circuit's revised claim construction of the term "wafer," yet refused to concede defeat and therefore needlessly prolonged this case. *See id*. at 18–21. In support of its argument, Rudolph points to the fact that Camtek offered no evidence to rebut the testimony of two key witnesses at the summary judgment stage, and reworded its expert's report to conceal a prior admission of infringement. *Id*. at 19–21. According to Rudolph, the clear inference to be drawn from Camtek's inability to present evidence in support of its non-infringement argument on remand is that it knew all along that the Falcon device trained using multiple discrete wafers. *Id*. at 19. In response, Camtek argues that its non-infringement position on remand was supported by expert testimony and was consistent with the Federal Circuit's claim construction of the term "wafer" and "plurality of wafers." *See* ECF No. 1044 at 4–8, 12–13, 33–38.

Despite the ultimate determination on remand that Camtek's Falcon device infringed[3] the

---

3

> In granting Rudolph's motion for summary judgment on claim 1, the Court stated, "Camtek does not dispute that the Falcon is capable of undertaking the steps described above by using multiple, physically discrete wafers, as opposed to merely using multiple individual die found on a single wafer." ECF No. 964 at 31. With respect to claim 3, the Court stated, "Because Camtek has presented no evidence to refute James' testimony or the opinion of Plaintiffs' expert upon which a reasonable jury could conclude that Camtek did not train its customers to use the Falcon in a

4

'6,298 patent, the Court concludes that Camtek's post-remand litigation position does not "stand out from others" with respect to the "substantive strength" or the "unreasonable manner" in which it was litigated such that a finding of "exceptional case" is appropriate. *See Octane Fitness*, 124 S. Ct. at 1756. Indeed, the Court has previously determined that "Camtek's arguments, although incorrect, were within the bounds of zealous advocacy and do not present a clearly unreasonable or bad faith interpretation of the Federal Circuit's mandate." ECF No. 964 at 23 n.6. The Court arrived at this conclusion after Rudolph presented substantially similar arguments to those it presents now, and this Court can see no justifiable reason to depart from that earlier decision. *See id.* ("Rudolph argues that it is entitled to attorneys' fees for costs it has incurred in responding to Camtek's motion[s] . . . because Camtek has needlessly prolonged the litigation by attempting to relitigate issues that have already been decided and has maintained its position that all issues of infringement . . . are subject to relitigation in bad faith.").

The Court also notes that the issue of infringement under the Federal Circuit's revised claim construction will be litigated further on appeal. *See* Notice of Appeal to Fed. Cir., ECF No. 1028. At the motion hearing, Camtek's counsel adamantly maintained that the Falcon device does not infringe because it trains with a single wafer, and Camtek indicated that this is precisely what they will argue again before the Federal Circuit. Moreover, Camtek contends that the alleged admission of infringement by its own expert is not the "proverbial silver bullet" when viewed in its proper context. *See* ECF No. 1044 at 35–36; *see also* Johnson Decl. Ex. D, at 13, ECF No. 1036.[4] Although

---

manner that infringed claim 3, the Court will grant Rudolph's motion for summary judgment with respect to this claim." *Id*. at 37.

[4] In its brief, Rudolph omitted the final sentence of paragraph forty-five of Dr. Mellor's 2007 report. *See* ECF No. 1035 at 3–4. At the hearing, Camtek argued that

Camtek's interpretation of the Federal Circuit's claim construction may have been different from both Rudolph's and this Court's, that does not automatically render its position unreasonable. *See Biax Corp. v. Nvidia Corp.*, No. 2013-1649, 2015 WL 755940, at *4 (Fed. Cir. Feb. 24, 2015) (holding that attorneys' fees are unwarranted where neither expert testimony nor claim construction orders foreclose a party's infringement position).

Thus, the substantive strength of Camtek's litigating position, considering both the law and the facts of the case, is not so exceptional as to justify an award of attorney fees. The claims, although determined to be without merit, are not so exceptionally meritless as to sufficiently set itself apart from other cases.

### 2. Camtek's assertion of issues outside the scope of remand

Rudolph additionally argues that this case is exceptional because Camtek improperly expanded the scope of remand to include a number of irrelevant or previously-decided issues (e.g., ECF Nos. 798, 818, 823, 828, 858, 966). *See* ECF No. 1035 at 9–14, 21–22. According to Rudolph, Camtek's "frivolous and wasteful" approach to the post-remand litigation was likely motivated by the knowledge that it would lose on the sole infringement issue. *Id.* at 21. Conversely, Camtek contends that all of its actions were justified according to its understanding of the scope of the

---

the missing language indicates that Dr. Mellor did not concede that the Falcon uses multiple wafers to train. The full text of paragraph forty-five is as follows:
> 45. Once a new job has been created, a wafer loaded and its diameter entered, the Falcon system can be trained. There are three steps involved in training the Falcon:
> • Creating a reference die
> • Creating a wafer map
> • Cleaning the reference (die)

The Falcon source code confirms that it is *not possible* to use cleaning die from *more than one wafer* to clean the reference die.
Johnson Decl. Ex. D, at 13 (emphasis added).

6

Federal Circuit's mandate. *See* ECF No. 1044 at 10–14, 19–20, 32. This is particularly true, according to Camtek, considering the fact that the Federal Circuit's construction of the term "wafer" must be applied consistently to each use of the term. *Id.* at 32 (citing *Southwall Techs. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (stating that a claim term "cannot be interpreted differently in different claims because claim terms must be interpreted consistently")).

The Court concludes that Camtek's expansion of the scope of remand does not require a finding that this is an exceptional case. As indicated above, the Court has already been presented with these arguments at summary judgment, where Chief Judge Tunheim determined that Camtek's arguments on remand, although incorrect, were within the bounds of zealous advocacy and not an unreasonable or bad faith interpretation of the Federal Circuit's mandate. ECF No. 964 at 23 n.6. Again, the Court sees no reason to disturb that ruling now. *See id* at 17–23. In other words, the Court finds that Camtek's post-remand motion practice did not needlessly prolong the litigation; rather, Camtek defended against Rudolph under what it incorrectly, but nonetheless reasonably believed to be the scope of the Federal Circuit mandate. Additionally, as Camtek points out, the mere fact that this was a hard-fought case does not automatically render it an exceptional one. *See* ECF No. 1044 at 15; *see also Octane Fitness*, 134 S. Ct. at 1756 n.6 (listing factors courts consider in determining an award of attorneys' fees).

### 3. Camtek's bad faith conduct

Finally, Rudolph argues that this case is exceptional given the fact that Camtek was found to (1) be a willful infringer, and (2) knowingly and in bad faith violate this Court's injunction. ECF No. 1035 at 14–16, 22–23. According to Rudolph, the fact that Camtek committed these bad acts before remand "leaves little doubt" that Camtek's litigation behavior post-remand was similarly

conducted in bad faith. *Id*. at 22. The Court disagrees.

        **a.**        **Willful infringement sale to Infinera**

On April 10, 2009, approximately five weeks after the jury verdict in this case, Camtek contacted Infinera, a California customer, and offered to sell them an infringing Falcon 200 machine. *See* Order 2–3, ECF No. 732. Despite the jury verdict, Camtek sold the machine to Infinera on May 22, 2009 for $234,960. *Id*. at 2, 6–7 ("The undisputed evidence reflects defendant intended to sell a product which it knew a jury had found infringed a valid patent."). Although the Court concluded that Camtek's sale to Infinera constituted willful infringement, the Court declined to award enhanced damages to Rudolph as a result of the sale. *See id*. at 8–11.

After carefully reviewing the record, the Court concludes that the willful infringement finding related to the post-verdict sale to Infinera does not support a finding of exceptional case. First, Judge Boylan previously determined that this infringing sale, although willful, was not a proper basis for awarding either enhanced damages or costs and fees. *See* ECF No. 732 at 11. Second, after fully considering the egregiousness of Camtek's conduct, Judge Boylan determined that Camtek's behavior was "within the bounds of zealous representation." *Id*. at 10. Third, and most importantly, the Court notes that the willful infringement finding was based upon on an erroneous claim construction that was later vacated by the Federal Circuit on appeal. *See August Tech. Corp.*, 655 F.3d at 1286 ("Because the jury was given a flawed claim construction, the verdict of infringement must be vacated."). Consequently, the Court concludes that a vacated willful infringement finding is of little weight in the exceptional case analysis.

        **b.**        **Contempt finding related to violation of injunction**

On August 28, 2009, the Court entered a permanent injunction[5] against Camtek. *See* Order on Final J. & Inj. Relief 4–8, ECF No. 547. In late 2009, while this injunction was in full force and effect, Camtek sold two Falcon machines—one for use in Malaysia and another for use in China. *See* Report & Recommendation 3, ECF No. 731. Consequently, on March 26, 2012, this Court found Camtek in contempt because it "knowingly and in bad faith violated the Court's clear and unambiguous injunction." Mem. of Law & Order 4, ECF No. 764. However, when the Federal Circuit revised the claim construction in this case and vacated the jury's damage award, the court also vacated the permanent injunction. *See August Tech.*, 655 F.3d at 1281, 1290–91. More importantly, this Court subsequently set aside the contempt finding based upon the Federal Circuit's recent decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371 (Fed. Cir. 2014) (holding that the manufacture, shipment, and delivery of accused products to buyers abroad does not constitute "sale" within the meaning of the patent infringement statute). *See* Mem. Op. & Order 23–24, ECF No. 1010 ("In light of the Federal Circuit's recent ruling in *Halo Electronics*, however, the Court finds that the Falcon sales to Malaysia and China are not infringing sales. Product discussions or even offers to sell that take place within the United States cannot convert into infringing sales products that are destined for consumers outside the United States.").

Accordingly, the Court concludes that a vacated contempt finding that arose from two violations of this Court's vacated injunction does not support a finding of exceptional case.

---

[5]
> Paragraph 5(a) of the injunction stated:
>> [Camtek is enjoined from] communicating with third parties (in person, via phone, via email, or by any other means) located in the United States for the purposes of offering to sell Falcon machines or machines that are colorable imitations thereof, notwithstanding where the third party intends to use the machines[.]
>
> ECF No. 547 at 8.

Although Camtek violated the injunction while it was in full force and effect, Rudolph cites no authority for the proposition that a vacated contempt finding may render a case exceptional. Moreover, the Court rejects Rudolph's assertion that the two acts underlying the vacated contempt order necessarily compel the conclusion that Camtek's post-remand litigation was similarly conducted in bad faith. This is particularly true in light of the fact that Camtek was ultimately successful in challenging the scope of the injunction in this case. *See* ECF No. 1010 (vacating the contempt order and sanctions award resulting from the violation of the Court's injunction). Regardless, sanctionable conduct alone is not the benchmark for awarding fees—a court may award fees only where a party's unreasonable conduct is so exceptional that it justifies an award of fees. *See Octane Fitness*, 124 S. Ct. at 1756–57.

In sum, based upon the totality of the circumstances over nearly a decade of litigation, and considering both the substantive strength of Camtek's arguments and the reasonableness of the manner in which Camtek litigated this case, the Court concludes that this case is not so exceptional as to justify an award of attorneys' fees.

### III. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for attorneys' fees (ECF No. 1018) be **DENIED**.

DATED: August 21, 2015                    <u>s/Franklin L. Noel</u>
                                          FRANKLIN L. NOEL
                                          United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 8, 2015**, written objections

that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 8, 2015** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.